Breitel, J.
Petitioner appeals from an order of the Appellate Division, Second Department. He brought this proceeding under article 78 of CPLR to review determinations of the respondents Building Inspector and Zoning Board of Appeals of the Town of Wallkill that two billboards on petitioner’s land violated a town zoning ordinance. Special Term denied the application and the Appellate Division affirmed in a short memorandum by a divided court.
An important constitutional issue is involved. Petitioner concedes that the signboards violate the provisions of the local law in question but argues that the ordinance is unconstitutional.
Since 1961, petitioner has been the co-owner of a 200-acre parcel of land in the Town of Wallkill. The tract is bisected by a highway, Route 17, which passes through the parcel in a general north-south direction. Shortly after acquiring the land, petitioner constructed a service station and a diner upon a portion of the premises west of the highway.
The zoning ordinance was adopted March 14, 1963. In July, 1964 petitioner contracted with a display advertiser for the construction and installation of two signs, advertising petitioner’s service station and restaurant. The signs were to be located on the portion of petitioner’s land east of Route 17. Before the signs had been completed respondent Building Inspector served a stop order on petitioner on the ground that the signs violated the town zoning ordinance. Petitioner appealed to the Zoning Board which affirmed the action of the Building Inspector.
The ordinance contains a number of sections which set forth a comprehensive and detailed plan for the regulation of signs in the township. The town is zoned into a number of use districts (e.g., “business, highway commercial, industrial”) and there are detailed provisions regulating the size, location and number *266 of signs allowed in each district. The regulations, however, cover only signs which are 1 ‘ related to an establishment located on the same lot” (“accessory” signs) and “non-accessory” signs are implicitly prohibited throughout the township.
As the signs advertising petitioner’s service station and restaurant are not on the same lot as the establishments they advertise, they are “non-accessory” signs and, therefore, are excluded by the ordinance. Petitioner argues that the zoning ordinance, insofar as it prohibits the maintenance of nonaccessory signs anywhere within the township, is “ arbitrary and unreasonable ’ ’ and that its application results in ‘1 an unconstitutional deprivation of the property of Petitioner ”.
Special Term held that “ The basic issue to be resolved is whether the Zoning Law regulates or prohibits billboards”. The court dismissed the petition because the law “does not prohibit; it does regulate”. On appeal, the majority in the Appellate Division came to the same conclusion as it regarded the ordinance “ as reasonably regulating the erection of signs in the town ”, and that the ordinance “ promotes symmetry and protects the town from becoming an eyesore ”. The two Justices who dissented concluded that the 1 ‘ flat prohibition of all advertising signs on all vacant land” was “unreasonable and confiscatory”, citing Matter of Mid-State Adv. Corp. v. Bond (274 N. Y. 82).
The Appellate Division distinguished the ordinance at issue from the one ruled unconstitutional in the Bond case (supra) “where erection of billboards or signboards, save for three isolated exceptions, was prohibited throughout the City of Troy ’ ’. The dissenting Justices in that court, however, are correct in their conclusion that Bond is in point. The ordinance in that case read as follows: “ It shall be unlawful to construct or erect any billboard and/or signboard within the corporate limits of the City of Troy, except upon real property owned or leased by the occupants thereof and for the sole purpose of advertising the sale of such real property or of merchandise kept for sale upon such premises. The provision of this Ordinance shall not apply to sky signs, as provided for in Section 172 of the Building Code, erected or to be erected upon buildings three stories or more in height.” (274 N. Y., p. 84).
*267 The petitioner in Bond, (supra) applied for a permit to erect billboards on vacant lots in the City of Troy and the application was denied on the ground that they would violate this ordinance. Special Term then granted the petitioner a peremptory order of mandamus to compel the city to issue the permit, but the Appellate Division, one Justice dissenting, reversed on the law (249 App. Div. 681).
On appeal, this court reversed the order of the Appellate Division and affirmed that of Special Term. The majority held: “We think the ordinance is void on its face. It is not an attempt by zoning to exclude billboards or other advertising signs from localities where such devices might mar the beauty of natural scenery or distract travelers on congested city streets. Even were we to assume that outdoor advertising on private property within public view may without compensation be restricted by law for cultural or aesthetic reasons alone, this prohibition, which includes all land in the city of Troy, without definition of the structures proscribed or other standard of regulation, cannot be sustained consistently with fundamental constitutional principles. (N. Y. Const, art. 1, § 6; U. S. Const. 14th Amend. § 1. Cf. People ex rel. Wineburgh Adv. Co. v. Murphy, 195 N. Y. 126; People ex rel. Publicity Leasing Co. v. Ludwig, 218 N. Y. 540; People v. Rubenfeld, 254 N. Y. 245, 248, 249; Perlmutter v. Greene, 259 N. Y. 327. See Opinion of Justices, 232 Mass. 605; General Outdoor Adv. Co. v. Dept. of Public Works, 289 Mass. 149; Freund, Police Power, § 182; Larremore, Public Aesthetics, 20 Harvard Law Review, 35.) ” (274 N. Y., supra, pp. 84-85; emphasis in original.)
Judge Finch, the sole dissenter, argued that “It is not unreasonable for a municipality or a State to desire to beautify its streets or highways ’ ’, and that the ordinance should not be deemed unconstitutional simply because it sought to achieve that end (274 N. Y., supra, p. 85).
For present purposes, then, the ordinance involved in Bond (supra) and the one at issue here are indistinguishable. The provisions of the Wallkill zoning ordinance are “ substantially different” from those considered in Bond only insofar as the prohibition of nonaccessory signs may be implied from the comprehensive provisions of the ordinance regulating accessory *268 signs. But the effects of the two ordinances upon prospective owners of nonaccessory signs are the same: the signs are prohibited.
Both Special Term and the majority in the Appellate Division fell into an analytical trap when they distinguished Bond (supra) from this case on the ground that one ordinance “ prohibited ” nonaccessory signs while the other “ regulates ” signs.
It is possible to manipulate concepts by the selection of a different level of verbalization, that is, a different level of generalization. An entirely different result can be “ logically ” forced. In this case, by selecting a wider generalization, namely, that of regulation of signs, it can be said that there is no prohibition of nonaccessory signs because any kind of regulation must embrace incidental and subordinate prohibition. On the other hand, by declining to consider all signs in one class and, instead, by insisting that there are two classes of signs each independent of the other, namely, accessory signs and non-accessory signs, one forces the conclusion that there is an absolute prohibition of nonaccessory signs and only regulation" with respect to accessory signs. That kind of analysis is fruitless because the conclusion is dictated by the way one starts the train of reasoning. The real question is more often whether particular conduct is prohibited regardless of one’s method of nomenclature or verbal classification.
On any realistic view, the ordinance involved in this case is indistinguishable in effect from the one ruled unconstitutional in Bond (supra). Consequently, a re-examination of the Bond case is required if the- ordinance at issue is to be sustained as constitutional.
It is concluded that the decisional as well as the practical bases for the holding in Bond (supra) are either no longer valid or have changed so considerably that the case should be overruled. As Judge Finch commented in his dissent in Bond: “ The Constitution, it is true, does not change with the times, nor does an emergency or unusual circumstances warrant a disregard of constitutional provisions. A determination of what is due process, aside from procedural matters, however, depends upon the reasonableness of the legislation. Circumstances, surrounding conditions, changed social attitudes, newly- *269 acquired knowledge, do not alter the Constitution, but they do alter our view of what is reasonable. Restrictions upon the use of property, which were deemed unreasonable in 1909, are regarded today as entirely reasonable and natural.” (274 N. Y. 82, 87, supra.)
The question, then, is whether the rule in the Bond case (supra) reflects present conditions and understanding of present-day community conditions.
One important factor in the courts’ increasingly permissive treatment of similar zoning ordinances has been the gradual acceptance of the conclusion that a zoning law is not necessarily invalid because its primary, if not its exclusive objective, is the esthetic enhancement of the particular area involved, so long as it is related if only generally to the economic and cultural -siting of The regulating community. On this point, People v. Stover (12 N Y 2d 462) is now the leading case. In Stover, this court held that a city ordinance which prohibited the erection of clotheslines in certain areas of residential districts was not invalid even though the obvious purpose of the ordinance was almost exclusively esthetic. Writing for the majority, Judge Fuld, now Chief Judge, traced the history of the courts’ treatment of zoning ordinances designed partly or primarily to satisfy esthetic objectives, commencing with the early eases such as People ex rel. Wineburgh Adv. Co. v. Murphy (195 N. Y. 126) which had held that esthetic considerations alone would be insufficient to justify exercise of the police power. But “ since 1930 ”, Judge Fuld noted that the question has been an open one in New York (12 N Y 2d, p. 466). He then concludes: “ Once it be conceded that aesthetics is a valid subject of legislative concern, the conclusion seems inescapable that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power.” (12 N Y 2d, p. 467.)
This holding is important for present purposes not only because, realistically, the primary objective of any anti-billboard ordinance is an esthetic one (Dukeminier, Zoning for Aesthetic Objectives: A Reappraisal, 20 Law & Contemp. Prob. 218, 220) but also because it at least partially undermines the authority of Bond (supra). While the majority opinion in that ease held that the ordinance before it would be unconstitutional even if ‘ ‘ aesthetic reasons alone ” could support such a legislative enactment, *270 it is significant that the first case cited by the court in support of its holding was People ex rel. Wineburgh Adv. Co. v. Murphy (195 N. Y. 126, supra) upon which Judge Fuld commented in the Stover case (supra). Moreover, Bond also cited People v. Rubenfeld (254 N. Y. 245) and Perlmutter v. Greene (259 N. Y. 327), two decisions also cited by Stover for its observation that the esthetic issue had been an open one since 1930.
In the only other New York case cited by Bond (supra), People ex rel. Publicity Leasing Co. v. Ludwig (218 N. Y. 540), the court held that an ordinance passed by the Board of Aldermen of New York City limiting the height of signs on roofs was not arbitrary and unreasonable (218 N. Y., p. 543).
Consequently, insofar as the Bond holding (supra) was predicated on the now discarded notion that esthetic objectives alone will not support a zoning ordinance, it may no longer be a valid precedent. But, as pointed out in Stover (supra), the question remains whether such an ordinance should still be voided because it constitutes an “ ‘ unreasonable device of implementing community policy ’ ” (12 N Y 2d 462, 467, quoting from Dukeminier, 20 Law & Contemp. Prob. 218, 231, supra). Moreover, Bond is cited in Stover as a case in which “ the legislative body [went] too far in the name of aesthetics ” (12 N Y 2d, p. 468).
In this respect, petitioner argues that the legislative distinction between identification signs and nonaccessory signs is unreasonable and discriminatory. Neither Bond (supra) nor any other decision of this court has dealt specifically with this point but numerous cases from other jurisdictions have had occasion to do so. In nearly all, zoning ordinances which have distinguished between accessory and nonaccessory signs have been upheld, providing that the distinctions were applied in a reasonable manner. The following excerpt from the opinion of Mr. Justice Bbeunae" in United Adv. Corp. v. Borough of Raritan (11 N. J. 144) is typical: ‘ ‘ The business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance. Plaintiff’s placements of its advertising signs, on the other hand, are made pursuant to the conduct of the business of outdoor advertising itself, and in effect what the *271 ordinance provides is that this business shall not to that extent be allowed in the borough. It has long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction. ” (11N. J. 150.)
To similar effect, .see, also, Murphy, Inc. v. Town of Westport (131 Conn. 292); Opinion of the Justices (103 N. H. 268); Ghaster Props, v. Preston (176 Ohio St. 425); Petition of Franklin Bldrs. (207 A. 2d 12, 30 [Del.]); Metromedia, Inc. v. City of Pasadena (216 Cal. App. 2d 270, 276-277); Schloss v. Jamison (262 N. C. 108); cf. Township of Superior v. Reimel Sign Co. (362 Mich. 481); but see Triborough Bridge & Tunnel Auth. v. Crystal & Son (2 A D 2d 37, 40-41, affd. 2 N Y 2d 961).
Nearly all of the decisions last cited, however, upheld ordinances which prohibited nonaccessory signs in certain areas of a town but not in others. In the relatively few cases which have passed upon ordinances similar to the one involved here, the results have not been uniform.
In Norate Corp. v. Zoning Bd. of Adjustment (417 Pa. 397) the ordinance at issue prohibited all nonaccessory signs throughout the township. The Supreme Court of Pennsylvania, while recognizing the validity of the distinction between accessory and non-accessory billboards, held that the ordinance nevertheless ‘ ‘ does not attempt to regulate, but to prohibit” and that it must be declared invalid as “ too general, too broad, and unreasonable ” (417 Pa. 407). On the other hand, in United Adv. Corp. v. Borough of Rarit an (11 N. J. 144, supra), the Supreme Court of New Jersey upheld, the constitutionality of a nearly identical statute. The opinion noted “ It is enough that outdoor advertising has characteristic features which have long been deemed sufficient to sustain regulations or prohibitions peculiarly applicable to it ” (11 N. J., p. 151). See, also, Murphy, Inc. v. Town of Westport (131 Conn. 292, supra) where the Supreme Court of Blrrors of -Connecticut upheld in principle a similar statute but remanded the ease to the trial court for further facts.
While the proliferation of nonaccessory signs or billboards was a burgeoning problem in 1937, when the Bond case (supra) was decided, since that time the amounts expended on outdoor adver *272 tising have increased nearly fourfold (Statistical Abstract of the United States [1966], p. 836). It is, of course, unnecessary to discuss at length the effect that this blight has had upon the national landscape; suffice it to say that it has probably exceeded the most pessimistic forecasts of the pre-World War II years.
During the same period, however, the proportional share of the advertising dollar expended on outdoor advertising has markedly declined (Statistical Abstract, p. 836, supra). This may be explained in part by the increasing number of restrictive State statutes and local ordinances which have been enacted to check the spread of billboards (see Dukeminier, 20 Law & Contemp. Prob., pp. 220, 221, 233, supra, for a partial compilation). (Perhaps the major reason for the decline has been the corresponding increases in the expenditures allocated to other media, particularly television and magazines.)
In other words, since 1937, outdoor advertising has become a less and less important facet of the advertising business while, at the same time, its deleterious effects have substantially increased. Moreover, the attitude of the courts both in the general field of economic regulation as well' as in the specific area under discussion here has also changed with the passage of time.
In concluding that the ordinance is constitutional and that the restrictive outlook of the Bond case (supra) should no longer be followed, it does not mean that any esthetic consideration suffices to justify prohibition. The exercise of the police power; should not extend to every artistic conformity or nonconformity. Bather, what is involved are those esthetic considerations which bear substantially on the economic, social, and cultural patterns of a community or district. Advertising signs and billboards, if misplaced, often are egregious examples of ugliness, distraction, and deterioration. They are just as much subject to reasonable controls, including prohibition, as enterprises which emit offensive noises, odors, or debris. The eye is entitled to as much recognition as the other senses, but, of'course, the offense to the eye must be substantial and be deemed to have material effect on the community or district pattern. Such limitations are suggested in the Stover case (12 N Y 2d 462, 467-468, supra). No doubt, difficult cases will arise in which there will be the necessity for discrimination on very fine bases, but that is not a new diffi *273 culty for Legislatures, administrative agencies, or courts. This case does not involve, however, such a difficulty.
Lastly, petitioner suggests that a town, as distinguished from a village, does not have the legislative power to adopt the ordinance in question. The recent decision of this court in Koffman v. Town of Vestal (23 A D 2d 199, affd. 18 N Y 2d 855) disposes of that issue.
Accordingly, the order of the Appellate Division should be ^firmed, with costs to respondents.