■ MITCHELL M. SACKSON et al., Appellants, v PHYLLIS ZIMMERMAN et al., Respondents. — In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Planning Board of the Village of Scarsdale, which denied petitioners' application for subdivision approval, petitioners appeal from an order of the Supreme Court, Westchester County (Jiudice, J.), dated November 16, 1983, which dismissed the petition. ¶ Judgment reversed, on the law, without costs or disbursements, petition granted, determination annulled, and the planning board is directed to grant petitioners' application for subdivision approval. ¶ Petitioners are the owners of property in the Village of Scarsdale, County of Westchester. The property, which is approximately 43,000 square feet in size, is currently improved with an existing dwelling unit. The subject parcel, by far the largest in the immediate area, is situated in an A-3 one-family zoning district pursuant to the village code. The A-3 zoning district permits construction of single-family homes on 10,000 square-foot lots. As a result, petitioners would be entitled to subdivide the property into four lots if it were vacant land. In view of the large size of their lot as compared with the requirements of the zoning district in which it is situated, petitioners desired to subdivide their property so as to create two contiguous lots. As proposed, one of the lots would accommodate their existing house and contain more than 30,000 square feet. The other lot would contain more than the minimum zoning requirement of 10,000 square feet. ¶ Prior to the time petitioners undertook any action to subdivide their property, the Board of Trustees of the Village of Scarsdale adopted Local Law No. 3 of 1983 (Village Code, § 12-14-10) which reads as follows: ¶ "*Houses too Large for their Lots.* ¶ "The Planning Board is authorized to deny any application for a subdivision, if any proposed lot in a subdivision containing a pre-existing house shall be determined by it in its discretion not to be large enough or not to have sufficient setbacks to permit the structure to be maintained in an appropriate relationship to its lot area, and to neighboring lots. In making such determinations, the Planning Board shall not be restricted by the minimum lot area or setback requirements for the specific zoning district in which the site is located. ¶ "In any such case, the Planning Board may require minimum lot areas or setbacks from all lot lines of such dimensions as it may determine to permit the structure to be maintained in an appropriate relationship to its lot, the neighboring lots and to the surrounding street system". ¶ On May 17, 1983, petitioners filed their application with the respondent planning board for approval of a subdivision of their existing lot No. 16 of section 2, block 1 (as listed on the Tax Map of the Village of Scarsdale), in the manner noted above. The petitioners' proposal consisted of excising a rectangular-shaped lot, denominated lot No. 16A, which would contain 10,150 square feet

(excluding the land under its road bed), leaving existing lot No. 16 with the remaining approximately 30,000 square feet upon which petitioners' spacious residence is situated. Significantly, the record reveals that many of the adjoining improved lots were approximately 10,000 square feet in size. Some of these lots contain only slightly more footage than the lot which would be formed if the application were granted, and some contain less square footage. ¶ At the close of the planning board's public hearing held on June 1, 1983, the petitioners' application was denied. The planning board's stated reason was as follows: "[P]ursuant to Local Law #3 of 1983, the Board finds that the newly established southerly sideyard for Lot #16 will be of such dimension that, given the mass and scale of the large existing residence, such setback will not be sufficient to permit the existing structure to be maintained in an appropriate relationship to Lot #16 and the proposed Lot #16A". ¶ Thereupon petitioners initiated the instant proceeding against the planning board seeking review of its determination. The petition alleges that (1) the board's determination is not supported by substantial evidence; (2) Local Law No. 3 of 1983 of the Village of Scarsdale is unconstitutionally vague and confiscatory in nature; and (3) Local Law No. 3 constitutes an improper and unlawful delegation of power to the planning board by the village board of trustees. ¶ Holding that a proceeding pursuant to CPLR article 78 may not be utilized to review legislative action or to challenge the constitutionality of a local law, Special Term treated the proceeding as an action for a declaration that the local law is unconstitutional as well as a proceeding pursuant to CPLR article 78 to review the determination of the planning board, and passed upon all the issues presented (see *Matter of Heimbach v Mills,* 54 AD2d 982). The court held that the local law was constitutional and that there was substantial evidence to support the board's determination. Accordingly, it dismissed the proceeding. Because we conclude that there is a lack of substantial evidence in the record to support the planning board's refusal to approve the requested subdivision, we need not pass upon any question as to the validity of the local law. The planning board's decision reflects its opinion that the aesthetic appeal of the existing dwelling will be lessened if an additional new structure is erected next to it. Although aesthetic concerns may properly enter into zoning restrictions, it does not follow that any aesthetic consideration may justify board action, where, as here, a property owner has the right to use his property in a certain fashion. A denial of that right solely on aesthetic grounds should be based upon a showing that "the offense to the eye * * * [is] substantial and * * * [has a] material effect on the community or district pattern" (see *Matter of Cromwell v Ferrier,* 19 NY2d 263, 272). In a word, the planning board's denial must be based on evidence more substantial than a generalized feeling that neighbors should have the aesthetic pleasure of viewing a mansion on the central portion of a lot some four times the size of their own. Since the record before us fails to disclose anything more than such a generalized feeling, i.e., fails to contain any evidence that the subdivision petitioners contemplate would result in a substantial offense to the eye or have a material effect on the area involved, we reverse for lack of substantial evidence and direct the planning board to approve the application for subdivision. Bracken, J. P., Weinstein, Brown and Niehoff, JJ., concur.