Suffolk Outdoor Advertising Co., Inc., Respondent-Appellant, v Theodore O. Hulse et al., Constituting the Town Board of the Town of Southampton, Appellants-Respondents.

Collum Signs, Inc., Respondent, v Town Board of the Town of Southampton, Appellant.

Frank J. Polacek, Jr., Doing Business as Behrle Outdoor Advertising, Respondent, v Town Board of the Town of Southampton, Appellant.

H. C. Williams Co. Inc., Respondent-Appellant, v Town of Southampton, Appellant-Respondent.

Second Department, March 18, 1977

*Emil F. DePetris (Richard E. DePetris* of counsel), for Theodore O. Hulse and others, appellants-respondents.

*Hancock, Estabrook, Ryan, Shove & Hust (Carl W. Peterson, Jr.,* of counsel), for Suffolk Outdoor Advertising Co., Inc., respondent-appellant.

*Tooker, Tooker & Esseks (William W. Esseks* and *Stephen R. Angel* of counsel), for H. C. Williams Co., Inc., respondent-appellant.

*John J. Munzel* for Collum Signs, Inc., and another, respondents.

MOLLEN, J. These appeals are addressed to the sensitive issue of balancing the right of the Town of Southampton to

exercise its police power to promote the public safety and welfare of its inhabitants with the right of the outdoor advertising industry to engage freely in activity which would otherwise be legal but for the prohibition contained in the ordinance herein involved.

On May 2, 1972 the Town of Southampton adopted Building Zone Ordinance No. 26, which, *inter alia,* required the removal of all nonconforming billboards (off-premises and nonaccessory) on or before June 1, 1975 (§ 3-110-70.03), and provided for application by the owners of such billboards to the town board for an extension of the amortization period (§ 3-110-70.04) and prohibited the erection of such billboards in all districts throughout the town, but provided that the town might establish public information centers where approved directional signs for businesses might be located (§ 3-50-60.07).

The plaintiffs, owners of billboards situated at various locations in the Town of Southampton, commenced separate actions to enjoin the defendants from enforcing the ordinance and seeking money damages. The complaints, *inter alia,* alleged:

(1) that the ordinance provision which required removal of the billboards was unconstitutional

    (a) on its face as a violation of their first amendment rights of free expression;

    (b) "as applied" to the respective plaintiffs as unreasonable and confiscatory; and

    (c) as pre-empted by the Federal Highway Beautification Act of 1965 and section 88 of the Highway Law; and

(2) that the ordinance provision which prohibits such billboards throughout the entire Town of Southampton is unconstitutional on its face because it does not reasonably relate to the public safety and welfare.

All of these claims withstood the defendants' respective motions and cross motions to dismiss.[1] Each complaint also contained a claim for damages which was dismissed at Special Term.[2]

The plaintiff Suffolk Outdoor further alleged in its fourth cause of action that the ordinance provision which required

1. Those represent Suffolk Outdoor's and Williams' respective first, second and third causes of action and Collum's and Polacek's respective first causes of action.

2. Those represent Suffolk Outdoor's and Williams' respective fifth causes of action and Collum's and Polacek's respective second causes of action.

the removal of the billboards is unconstitutional as violative of the equal protection clause. This cause of action was dismissed upon the defendants' cross motion.

The plaintiff Williams also alleged in its fourth cause of action that the ordinance provision regarding amortization procedures was unconstitutional because it did not set forth adequate standards for its application. This cause of action was also dismissed at Special Term.

Lastly, Suffolk Outdoor's motion for a preliminary injunction was also denied.

The defendants urge that none of the plaintiffs' claims constitute a viable cause of action. Moreover, they contend that the plaintiffs are precluded from attacking the subject "removal" provision as unconstitutional as applied for failure to exhaust their administrative remedies; and that the plaintiffs' allegations that the "prohibition" provision is unrelated to safety and public welfare are insufficient because they are conclusory in nature.

Subsequent to the commencement of these actions, Suffolk Outdoor applied by letter to the town board for an extension of time. Although Suffolk Outdoor was notified that the letter was insufficient in form, it did not submit any further request for an extension of time. None of the other plaintiffs attempted to obtain an extension.

On June 16, 1976, this court directed that the appeals and cross appeals be heard together.

### MAIN APPEAL BY THE DEFENDANTS.

There are four issues presented in the main appeal:

(1) Whether the "prohibitory" provision is unconstitutional because it does not reasonably relate to the public safety and welfare;

(2) Whether the "removal" provision violates the plaintiffs' first amendment right of freedom of expression;

(3) Whether the "removal" provision is in conflict with a State policy allegedly embodied in section 88 of the Highway Law; and

(4) Whether the plaintiffs' failure to exhaust their administrative remedies precludes their claim that the "removal" provision is unconstitutional "as applied".

CROSS APPEAL BY PLAINTIFFS SUFFOLK

OUTDOOR AND WILLIAMS.

There are four issues raised on the cross appeals:

(1) Whether the administrative remedy contained in the subject ordinance is unconstitutionally vague and/or procedurally invalid;

(2) Whether the "removal" provision constitutes a denial of equal protection;

(3) Whether an action for damages properly lies against The Town of Southampton for its enforcement of the ordinance; and

(4) Whether the plaintiff Suffolk Outdoor is entitled to a preliminary injunction.

We modify the orders by dismissing those portions of (1) Suffolk Outdoor's first, second and third causes of action, (2) Collum's first cause of action, (3) Polacek's first cause of action, and (4) Williams' first, second and third causes of action, which assert the invalidity of the subject ordinance on grounds other than the assertion that the provision thereof which prohibits billboards is not reasonably related to public safety and welfare. In all other respects we affirm.[3]

The only theory posited by the plaintiffs which we find viable is their claim that the ordinance provision which prohibits billboards and signs is unconstitutional on its face because it does not reasonably relate to the public safety and welfare. We believe that the complaint sets forth sufficient allegations to create a factual issue and that the matter should be determined at trial.

The ordinance under review permits on-premises (i.e., accessory) billboards ¹ and signs, but prohibits off-premises (i.e., nonaccessory) billboards and signs in all districts of Southampton, with the exception that the town may establish special public information centers where approved directional signs for businesses may be located.[4]

The courts of this State have heretofore upheld municipal

---

3. Williams has limited its cross appeal by its brief so as to omit an argument urging the reversal of the dismissal of its fifth cause of action (for damages), and the Town of Southampton has limited its main appeal against Williams, by its brief, to omit an argument urging the dismissal of the plaintiff's sixth cause of action (for a permanent injunction), which survived that defendant's motion to dismiss.

4. Off-premises nonaccessory billboards and signs advertise goods or services not offered for sale on the same premises as the sign.

ordinances prohibiting billboards throughout an entire municipality. In *Matter of Cromwell v Ferrier* (19 NY2d 263), wherein this very issue was directly involved, the Court of Appeals upheld a zoning ordinance which permitted accessory signs but implicitly prohibited nonaccessory signs throughout the entire Town of Wallkill. In doing so, the court specifically and directly overruled *Matter of Mid-State Adv. Corp. v Bond* (274 NY 82), wherein the Court of Appeals had made a distinction between ordinances which were merely regulatory and those which were prohibitory in nature. Judge BREITEL, speaking on behalf of the majority of the court in *Cromwell,* in the course of a comprehensive opinion, directed himself to that issue as follows (p 268): "It is concluded that the decisional as well as the practical bases for the holding in *Bond (supra)* are either no longer valid or have changed so considerably that the case should be overruled." Judge BREITEL went on to say (p 269):

"One important factor in the courts' increasingly permissive treatment of similar zoning ordinances has been the gradual acceptance of the conclusion that a zoning law is not necessarily invalid because its primary, if not its exclusive objective, is the esthetic enhancement of the particular area involved, so long as it is related if only generally to the economic and cultural setting of the regulating community." Again, Judge BREITEL stated (p 271):

"It has long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction."

The Court of Appeals, in *Cromwell,* set forth the sole criteria to be applied in determining the validity of this type of ordinance, namely, reasonableness. The court held (p 270): "Consequently, insofar as the *Bond* holding *(supra)* was predicated on the now discarded notion that esthetic objectives alone will not support a zoning ordinance, it may no longer be a valid precedent. But, as pointed out in *Stover* (*[People v Stover,* 12 NY2d 462], *supra),* the question remains whether such an ordinance should still be voided because it constitutes an ' "unreasonable device of implementing community policy" ' * * * In nearly all [decisions of this court], zoning ordinances which have distinguished between accessory and

nonaccessory signs have been upheld, providing that the distinctions were applied in a reasonable manner."

The Court of Appeals pointed out (p 272): "In concluding that the ordinance is constitutional and that the restrictive outlook of the *Bond* case *(supra)* should no longer be followed, it does not mean that any esthetic consideration suffices to justify prohibition. The exercise of the police power should not extend to every artistic conformity or nonconformity. Rather, what is involved are those esthetic considerations which bear substantially on the economic, social, and cultural patterns of a community or district. Advertising signs and billboards, if misplaced, often are egregious examples of ugliness, distraction, and deterioration. They are just as much subject to reasonable controls, including prohibition, as enterprises which emit offensive noises, odors or debris. The eye is entitled to as much recognition as the other senses, but, of course, the offense to the eye must be substantial and be deemed to have material effect on the community or district pattern."

Clearly the cogent dissent by Judge FINCH in *Matter of Mid-State Adv. Corp. v Bond* (274 NY 82, *supra)* has now become the prevailing viewpoint in New York. Noteworthy in this regard are Judge FINCH's comments (p 89): "Perhaps factories, stores and the industrial sections of a city naturally tend to be ugly, but it does not follow that business may not be carried on amid more pleasant surroundings. Certainly any city enacting such an ordinance would present a more pleasing picture to the eye than one plastered with blatant signboards * * * A city might well conclude that it is more likely to attract commercial enterprises and permanent residents if it improves its appearance; that its residents will gain financially by such an improvement; or that the elimination of distracting and annoying billboards will add to the physical and mental well-being of its inhabitants * * * The billboard eyesore is in many ways akin to annoying sounds and undesirable odors which undoubtedly can be prohibited. Although such restrictions may be more desirable in residential areas, nevertheless, their extension to business districts cannot be termed unreasonable."

Thereafter, the Court of Appeals had occasion to address itself to this again in *People v Goodman* (31 NY2d 262). The issue arose in a somewhat different manner. In that instance the Village Board of the Village of Ocean Beach, Suffolk County, enacted an ordinance somewhat similar in nature to

the one herein under consideration. However, it also contained penal sanctions for failure to remove offending signs. The defendant, a pharmacist, refused to remove the prohibited sign, alleging, among other reasons, that his drugstore rendered a public service, and that the ordinance, as applied to him, exceeded the village's authority under its police powers. The defendant was prosecuted, found guilty and appealed. The Court of Appeals, in a unanimous opinion, affirmed the conviction and reiterated its position as to the validity of such ordinances. In doing so it dismissed a number of constitutional issues raised by the defendant and again postulated the sole test to be that of reasonableness. Judge JASEN stated (P 265): "We conclude that this ordinance represents a valid and permissible exercise of the police power and that the defendant's conviction thereunder was proper and should be affirmed. * * * It is now settled that aesthetics is a valid subject of legislative concern and that reasonable legislation designed to promote the governmental interest in preserving the appearance of the community represents a valid and permissible exercise of the police power. *(People v Stover, 12 NY2d 462.)* Under the police power, billboards and signs may be regulated for aesthetic purposes." (Citing numerous cases.) Judge JASEN continued on to declare (pp 265-266): "In the case before us, we deal with an ordinance concededly motivated by aesthetic considerations. Of course, as with every enactment under the police power, this measure must satisfy the test of reasonableness. [Citing cases.] Our inquiry, therefore, is *limited* to determining whether, under all the circumstances, the means adopted in this ordinance are *reasonably related* to the community policy sought to be implemented, and are not unduly oppressive" (emphasis supplied). Judge JASEN further stated (p 267): "In sum, this ordinance merely proscribes the erection and maintenance of commercial signs which, in the circumstances and setting here present, would be unnecessarily offensive to the visual sensibilities of the average person and would materially detract from the community and district pattern. *(Matter of Cromwell v. Ferrier, 19 N Y 2d 263, supra; People v. Stover, 12 N Y 2d 462, supra; New York State Thruway Auth. v. Ashley Motor Ct., 10 N Y 2d 151, supra.)"*[5]

---

5. Resolution of the constitutionality of city-wide prohibition of off-premises (nonaccessory) signs has not been uniform throughout the jurisdictions. Prohibition upheld: *Murphy, Inc. v Town of Westport* (131 Conn 292); *United Adv. Corp. v Borough of Metuchen* (42 NJ 1); *United Adv. Corp. v Borough of Raritan* (11 NJ 144); *General Outdoor Adv. Co. v Department of Public Works* (289 Mass 149 [where billboard

Plaintiffs contend that ordinances of the type herein involved are violative of the fundamental right of freedom of expression. This contention has great appeal in a society such as ours, where few, if any, rights are more cherished or given greater or more zealous protection. Nevertheless, we find no merit to such claim in the instant circumstances. In this regard it is noteworthy that in the *Cromwell* and *Goodman* cases, heretofore cited and quoted at length, the Court of Appeals, in exploring the various claims of unconstitutionality as to ordinances of similar nature, expressed no concern or qualms regarding any restriction on freedom of speech. Similarly, in *New York State Thruway Auth. v Ashley Motor Ct.* (10 NY2d 151), wherein the Court of Appeals sustained the validity of a statute restricting the erection of billboards and other advertising devices along the Thruway, Judge FULD, writing on behalf of a unanimous court, disposed of a number of constitutional issues, but expressed no concern as to any diminution of the right of free speech. In *People v Stover* (12 NY2d 462) the Court of Appeals sustained the validity of an ordinance which clearly and concededly had as its purpose and major motivation the stifling of a "peaceful protest" by the defendants therein. In that case, the specific issue before the court was the contention that the ordinance represented an infringement of the right of freedom of speech. In the face of such contention, and after conceding that the nonverbal proscribed activity was a form of free speech within the meaning of the First Amendment, the court nevertheless affirmed the convictions and sustained the ordinance as a

---

regulations extending to business districts were prohibitory in effect]); *Donnelly & Sons v Outdoor Adv. Bd.* (339 NE2d 709, 720 [Sup Judicial Ct, Mass, 1975, town by-laws effected a prohibition of nonaccessory signs by implication]); in *Donnelly (supra)* the court stated that:

"A city-wide prohibition of billboards can also be justified on the ground that a community has a legitimate interest in improving the aesthetic quality of its business districts, as well as its residential districts. Cf. *Schloss v. Jamison,* 262 N.C. 108, 116-117, 136 S.E. 2d 691 (1964). There is no reason why the notion of beauty should be inimical to a business area." Prohibition unconstitutional: *Metromedia, Inc. v City of Des Plaines* (26 Ill App 3d 942); *Norate Corp. v Zoning Bd. of Adjustment* (417 Pa 397); *Daikeler v Zoning Bd. of Adjustment of Montgomery Township* (1 Commonwealth Ct 445). (In *Daikeler,* the court held that where the municipal ordinance excludes billboards from an entire community, ·the burden of proof is upon the municipality to show that the prohibition is reasonable.) *Central Outdoor Adv. Co. v Village of Evendale* (54 Ohio Opn 354 [the court held invalid the ordinance which excluded all but on-premises signs from industrial districts where a broad spectrum of uses was permitted. However, the court held that the limitation was valid in some highly restricted districts]).

valid exercise of police power. Moreover, the lone dissenter, Judge VAN VOORHIS, began his dissenting opinion with the following statement (p 470): "My concern in this case is not with limitation of free speech nor whether aesthetic considerations are enough in themselves to justify zoning regulations in prescribed instances, but with the extent to which a municipality can go in restricting the use of private property."[6]

It may well be that *Virginia Pharmacy Bd. v Virginia Consumer Council* (425 US 748) may be construed by some to hold contrary to the position taken by this court on the question of infringement of free speech. However, a careful analysis of the parameters of the holding in the *Virginia* case clearly leads to the conclusion that the ordinance in the instant case does not come within the proscription of that case. The Supreme Court therein held that commercial speech, per se, is not outside the protection of the First Amendment, contrary to the position maintained previously in *Valentine v Chrestensen* (316 US 52) and subsequently modified in *Bigelow v Virginia* (421 US 809). The Virginia statute, however, involved a *total* ban on publication or advertisements of any kind whatsoever. Insofar as is pertinent herein, that statute read as follows: "Any pharmacist shall be considered guilty of unprofessional conduct who * * * or (3) publishes, advertises or promotes, directly or indirectly, in any manner whatsoever, any amount, price, fee, premium, discount, rebate or credit terms for professional services or for drugs containing narcotics or for any drugs which may be dispensed only by prescription." *(Virginia Pharmacy Bd. v Virginia Consumer Council,* 425 US 748, 750, n 2, *supra.)*

Obviously, the above-quoted statute is an all-encompassing effort to prevent the dissemination of certain information in any manner whatsoever. As the Supreme Court pointed out in its opinion, such statute has as its purpose and result not only the complete stifling of the freedom of speech right of the one so proscribed, but it as well deprives the general public of the correlative right to receive such information. Considerations of aesthetics or other appropriate governmental concerns,

---

6. This contention has been rejected by other jurisdictions as well: *Ghaster Props. v Preston* (176 Ohio St 425); *United Adv. Corp. v Borough of Raritan* (11 NJ 144); *Howard v State Dept. of Highways of Colorado* (478 F2d 581, 584-585); *Markham Adv. Co. v State of Washington* (73 Wn 2d 405, *en banc,* dsmd for want of a Federal question 393 US 316, rehearing den 393 US 1112); *General Outdoor Adv. Co. v Department of Public Works* (289 Mass 149, app dsmd 297 US 725).

such as public interest and safety, were not involved and not protected by the statute found to be offensive to the concept of freedom of speech.

Mr. Justice BLACKMUN, writing the majority opinion for the court, posited circumstances which lead to the conclusion that statutes such as the one involved herein are valid exercises of police power. He stated (425 US, at pp 770-771):

"In concluding that commercial speech, like other varieties, is protected, we of course do not hold that it can never be regulated in any way. Some forms of commercial speech regulation are surely permissible. We mention a few only to make clear that they are not before us and therefore are not foreclosed by this case.

"There is no claim, for example, that the prohibition on prescription drug price advertising is a mere time, place and manner restriction. We have often approved restrictions of that kind provided that they are justified without reference to the content of the regulated speech, that they serve a significant governmental interest, and that in so doing they leave open ample alternative channels for communication of the information. Compare *Grayned v. City of Rockford,* 408 U. S. 104, 116 (1972); *United States v. O'Brien,* 391 U. S. 367, 377 (1968); and *Kovacs v. Cooper,* 336 U. S. 77, 85-87 (1949), with *Buckley v. Valeo* [424 U. S. 1 (1976)], *supra; Erznoznik v. City of Jacksonville,* 422 U. S. 205, 209 (1975); *Cantwell v. Connecticut,* 310 U. S. at 304-308; and *Saia v. New York,* 334 U. S. 558, 562 (1948). Whatever may be the proper bounds of time, place, and manner restrictions on commercial speech, they are plainly exceeded by this Virginia statute, which singles out speech of a particular content and seeks to prevent its dissemination completely."

In his concluding paragraph (p 773), Mr. Justice BLACKMUN very succinctly presented the sole issue decided in the *Virginia* case: "What is at issue is whether a State may completely suppress the dissemination of concededly truthful information about entirely lawful activity, fearful of that information's effect upon its disseminators and its recipients. Reserving other questions, we conclude that the answer to this one is in the negative."

Similarly, *People v Remeny* (40 NY2d 527, 529-530) is not controlling on the issues herein. In that case the Court of Appeals, in a 4 to 3 decision, held unconstitutional an ordinance which prohibited the distribution of commercial leaflets

in "all public places, at all times and under all circumstances" as violative of the First Amendment, citing the *Virginia* case *(supra)*. It should be noted that handbills are transitory in nature and that potential recipients of handbills are free to reject them. Contrariwise, billboards thrust their message upon passersby, thereby making them a captive audience (see *Donnelly & Sons v Outdoor Adv. Bd.* (339 NE2d 709 [Sup Judicial Ct, Mass, 1975]). Billboards are an unsightly, constant, immutable intrusion upon all who come within their orbit. They also present a safety concern not present in the distribution of handbills.

In this regard, Mr. Justice BRANDEIS aptly observed: " 'Billboards, street car signs, and placards and such are in a class by themselves * * * Advertisements of this sort are constantly before the eyes of observers on the streets * * * to be seen without the exercise of choice or volition on their part. Other forms of advertising are ordinarily seen as a matter of choice on the part of the observer * * * In the case of newspapers and magazines, there must be some seeking by the one who is to see and read the advertisement. The radio can be turned off, but not so the billboard' " *(Packer Corp. v Utah,* 285 US 105, 110).

In *General Outdoor Adv. Co. v Department of Public Works* (289 Mass 149, 168, app dsmd 297 US 725), the court, addressing itself to the outdoor advertising industry, stated: "[I]t is forcibly thrust upon the attention of all such persons [who travel on the highways], whether willing or averse. For such persons who strongly wish to avoid advertising intrusion, there is no escape; they cannot enjoy their natural and ordinary rights to proceed unmolested." (See, also, *Lehman v City of Shaker Heights,* 418 US 298, 302.)

We believe that the instant ordinance more appropriately belongs within the ambit of reasonable exercise of police power alluded to by Mr. Justice BLACKMUN in the above-quoted portion of his opinion in the *Virginia* case.

The plaintiffs have apparently abandoned their claim that the town's ordinance is pre-empted by the Federal Highway Beautification Act of 1965. Instead, they contend that the town ordinance is in conflict with a State policy which requires that compensation be paid for the removal of the billboards along Federally-aided and interstate highways, as reflected in section 88 of the Highway Law. We find no merit in this contention. Nor do we find any merit to plaintiff

Suffolk Outdoor's allegation that the ordinance violates that plaintiff's rights to equal protection under the Fourteenth Amendment.

Plaintiffs have further challenged this ordinance on the ground that it is unconstitutional "as applied" to their property. Such contention may not be raised until such time as they have exhausted their administrative remedies (see *Old Farm Road v Town of New Castle,* 26 NY2d 462, 464; *Janas v Town Bd. of Town of Fleming,* 51 AD2d 473; 2 Anderson, New York Zoning Law and Practice, § 21.10). Heretofore, none of the plaintiffs proceeded in accordance with the administrative remedies provided for in the ordinance.

Plaintiff Williams has pleaded and urged that the amortization provisions of the ordinance are unconstitutional because they are imprecise and vague. We find that the administrative remedy as contained in the ordinance is not unconstitutionally vague. A delegation of power from a local legislative body, such as the town board, to a zoning board of appeals, to grant or deny special permits or exceptions, must be accompanied by standards sufficient to guide the discretion to be exercised by the zoning board of appeals (2 Anderson, New York Zoning Law and Practice, § 19.11). However, no standards are required where a legislative body reserves such power to itself *(Matter of Larkin Co. v Schwab,* 242 NY 330, 333-334; *Matter of Green Point Sav. Bank v Board of Zoning Appeals of Town of Hempstead,* 281 NY 534, 538; *Matter of 4M Club v Andrews,* 11 AD2d 720; *Matter of Shell Oil Co. v Farrington,* 19 AD2d 555, 556; 2 Anderson, New York Zoning Law and Practice § 19.12).

The argument that there is no provision for review of the initial determination made by the Town Board of the Town of Southampton is equally without merit. Recourse is always available by way of judicial review to any party aggrieved by an adverse administrative decision.

As noted earlier, each complaint contained a claim for damages which was dismissed at Special Term. An action for damages does not lie against the Town of Southampton. A municipality is not liable in damages for enforcing an ordinance, even when such ordinance is ultimately declared to be invalid or unconstitutional (see 3 Rathkopf, Law of Zoning and Planning [3d ed], ch 82, 82-83 to 82-84; see, also, *McCauslan v City of New York,* 183 Misc 954; cf. *Rottkamp v Young,* 21 AD2d 373, affd 15 NY2d 831).

Lastly, we address ourselves to Special Term's denial of Suffolk Outdoor's motion for a preliminary injunction. A preliminary injunction is a drastic form of relief requiring a showing of irreparable harm and a reasonable probability of success (see CPLR 6301; *City of Yonkers v Federal Sugar Refining Co.,* 207 NY 724; see, also, 7A Weinstein-Korn-Miller, NY Civ Prac, par 6301). A legislative enactment carries with it an exceedingly strong presumption of constitutionality (see *Matter of Malpica-Orsini,* 36 NY2d 568, 570). Sufficient basis has not been presented for such a drastic remedy. Consequently, Suffolk Outdoor is not entitled to such provisional relief.

In conclusion, we find no merit to any of plaintiffs' contentions other than the issue as to whether there is a reasonable relationship between the ordinance under challenge and the exercise of the Town of Southampton's police power in the furtherance of public safety and welfare. As to the resolution of that issue, in view of the conflicting contentions, we hold that a trial is warranted.

SHAPIRO, J. (dissenting). I respectfully dissent. I would reverse the orders appealed from and grant judgment to plaintiffs (1) declaring that the sections of Building Zone Ordinance No. 26 of the Town of Southampton which prohibit the maintenance and use of all billboards in all districts of the town and compel the removal as unlawful structures of all billboards erected in the town before June 1, 1975 are unconstitutional and void and (2) enjoining the enforcement of those provisions of the ordinance.[1]

In order to understand the constitutional issues raised it is necessary to consider the specific language of the relevant portions of the ordinance.

Section 3-50-60.07 of the ordinance provides: "Billboards are prohibited in all Districts, except that the Town may establish special public information centers wherein approved directional signs for businesses may be located."

Billboards are defined in section 1-30-20.68, which provides: "SIGN. BILLBOARD. A SIGN which directs attention to a business,

---

1. I am aware that the only motions before the court are those of Suffolk Outdoor for a preliminary injunction and of the defendants to dismiss the complaint for failure to state a cause of action and failure to exhaust administrative remedies. However, the parties have addressed themselves to the merits and have thereby charted their course in such a manner as to permit this court to resolve the issues on their merits. The majority is in accord with this view.

commodity, service, entertainment, or attraction sold, offered or existing elsewhere than upon the same lot where such SIGN is displayed, or only incidentally sold, offered or existing upon such lot."

Section 3-50-60.03 provides: "No flashing or moving signs, except time and temperature information, nor roof top signs shall be permitted in any District."

Article 3-50, which is entitled "Sign Regulations", limits the size and location of permitted signs and restricts their purpose to professional and announcement signs, identification signs, real estate "for sale" or "for rent" signs and construction signs and temporary signs. Section 3-50-70.01, as amended July 5, 1972, provides: "No sign shall be erected in the unincorporated area of the Town of Southampton without first obtaining a permit from the Building Inspector and paying the required fee set forth in this Section, except that a residence name plate, street number, 'for sale', 'for rent', 'beware' or 'caution' sign not exceeding two (2) square feet accessory to a one or two family residential building shall not require such a permit."

Section 3-50-70.03 provides: "The Building Inspector shall determine that such proposed sign complies with all the requirements of this Ordinance and all other applicable laws and regulations of the Town of Southampton before authorizing issuance of a sign permit. Nonconforming signs shall be designated as such on the sign permit issued."

Section 3-110-70 of the ordinance is entitled "Compulsory Termination of Nonconforming Structure or Use". Subsection 3-110-70.03 thereof provides: "Anything to the contrary in this Ordinance notwithstanding, any nonconforming billboard or any flashing or moving sign, except as provided in Section 3-50-60.03, wherever located, shall become an unlawful structure on June 1, 1975, and shall thereupon be removed."

Subsection 3-110-70.04 provides: "Any owner of any such nonconforming billboard or flashing or moving sign, except as provided in Section 3-50-60.03, who alleges that the period herein provided for amortization of such sign is unreasonable as to a particular sign may apply to the Town Board for an extension of time for amortization of such sign. If the Town Board finds that the construction cost of a particular sign would not be reasonably amortized by the aforesaid date, then the Town Board may extend the amortization period to a date which it finds would provide a reasonable amortization period.

In no event however, shall the total amortization period for a particular job extend beyond a date which would result in amortization of the construction cost of a particular sign at a rate of less than $100.00 per year, computed on a 'straight line' basis."

An examination of the quoted excerpts of the Southampton Zoning Ordinance (and the other portions included in the appendix on appeal) shows that the only reference which indicates any motivation for the ordinance, other than the basic esthetic one, appears in section 3-50-60.04, which provides: "Illumination of signs shall be accomplished by means of shielded light sources and in such manner that no glare shall extend beyond the property lines, disturb the vision of passing motorists, or constitute hazard to traffic."

The constitutional issues in this case thus are:

1. Do the plaintiffs' complaints, which allege, *inter alia,* that the ordinance on its face violates the freedom of press provisions of the First Amendment to the Federal Constitution (made applicable to the States by the Fourteenth Amendment) fail to state a cause of action?

2. Do the plaintiffs' causes of action which allege deprivation of their property without due process of law based on the total prohibition by the ordinance of the continuance of the plaintiffs' billboard businesses within the town, without compensation for the loss of the fair market value of the businesses, other than recovery by them of their cost of construction of their billboards, state a valid claim?

I have stated the constitutional issues as I see them because I do not agree with the majority that what is involved here is a question of balancing the conflicting interests of the Town of Southampton in exercising "its police power to promote the public safety and welfare of its inhabitants with the right of the outdoor advertising industry to engage" in the billboard business. If, in fact, as I believe is the case, the plaintiffs here are deprived of their First Amendment rights to freedom of the press by this ordinance, then the test of the validity of the ordinance is not properly one of balancing their right to maintain billboard signs in the town, but rather whether the defendants can establish a compelling State interest to support their action banning *all* billboards within the geographical limits of the town (see *National Assn. for Colored People v Button,* 371 US 415, 438; see, also, *La Rocca v Lane,* 47 AD2d 243, 247, affd 37 NY2d 575, 583; *Sherbert v Verner,* 374 US

398, 406, where the court, speaking of First Amendment rights said: "It is basic that no showing merely of a rational relationship to some *colorable* state interest would suffice; in this highly sensitive constitutional area, '[o]nly the gravest abuses, endangering paramount interests, give occasion for permissible limitation,' *Thomas v Collins,* 323 US 516, 530"). (Emphasis supplied.) The Town of Southampton's right to use its power to engage in esthetic zoning to bar *all* billboards from *all* of its extensive territory can hardly be justified as needed to avert a grave "abuse, endangering paramount interests" of the freedom of the press. Nor does the taking of such action by the town qualify as even a "colorable" State interest.

Nor can the ordinance be upheld as an exercise of the police power. Neither the majority nor the defendants set forth any basis for a finding that the barring and removal of *all* billboards from the town will promote or protect the public welfare or safety or that the continued presence of billboards in the town will endanger the public health, safety or morals.

I am compelled to the conclusion that the ordinance denies the plaintiffs their First Amendment rights of freedom of the press under the holding of our Court of Appeals in *People v Remeny* (40 NY2d 527). In that case, Judge WACHTLER, speaking for a majority of the court, struck down as unconstitutional a New York ordinance which provided, in relevant part (p 529):"No person shall throw, cast or distribute, or cause or permit to be thrown, cast or distributed, any handbill, circular, card, booklet, placard or other advertising matter whatsoever, in or upon any street or public place, or in a front yard or courtyard, or on any stoop, or in the vestibule of any hall in any building, or in a letter box therein" (Administrative Code of City of New York, § 755 [2]-7.0, subd 5) saying (pp 529-530): "It is settled that an ordinance which prohibits the distribution of leaflets or handbills in all public places, at all times and under all circumstances, cannot be considered a reasonable regulation of constitutionally protected speech (see, e.g., *Lovell v Griffin,* 303 US 444; *Hague v CIO,* 307 US 496; *Schneider v State,* 308 US 147; *Jamison v Texas,* 318 US 413; *Talley v California,* 362 US 60)."

In his opinion, Judge WACHTLER noted that in 1942 the Supreme Court of the United States, in *Valentine v Chrestensen* (316 US 52), considered the constitutionality of the New York City ordinance involved in *Remeny* and held it constitu-

tional on the ground that *commercial speech* was not protected under the First Amendment. He then pointed out (p 592) that in *Virginia Pharmacy Bd. v Virginia Consumer Council* (425 US 748) the Supreme Court reversed itself and held that " 'commercial speech, like other varieties, is protected' " under the First Amendment. By reason thereof, Judge WACHTLER concluded that (p 530): "If an ordinance absolutely prohibiting all distribution of handbills containing constitutionally protected statements on political, social and religious topics is invalid, then this ordinance relating to commercial speech, now also constitutionally protected, suffers from the same infirmity." He went on to say (p 530): "The city of course has a legitimate interest in seeing that the exercise of the right does not contribute to the litter on the streets or otherwise violate the law. Thus they may enact reasonable regulations governing the time, place and circumstances of the distribution. But in our view they cannot enact an ordinance absolutely prohibiting all distribution of commercial handbills on city streets and call it a reasonable regulation of the activity. Although we sympathize with the city's desire to eliminate litter from the streets, we have concluded that the ordinance, as presently worded, is unconstitutional."

Since commercial speech now comes within the ambit of the First Amendment, billboards, just like handbills, contain constitutionally protected statements. Therefore, in "absolutely prohibiting all" use of billboards throughout the Town of Southampton because they believe that the town, in the exercise of its power of esthetic zoning, may bar all billboards as unesthetic, the defendants have used too broad a brush.

In upholding the limited ordinance in *Matter of Cromwell v Ferrier* (19 NY2d 263), which regulated the size, location and number of signs allowed in each district, the Court of Appeals warned that (p 272): "In concluding that the ordinance is constitutional and that the restrictive outlook of the *Bond [Matter of Mid-State Adv. Corp. v Bond,* 274 NY 82] case (supra)* should no longer be followed, *it does not mean that any esthetic consideration suffices to justify prohibition.* The exercise of the police power should not extend to every artistic conformity or nonconformity. Rather, what is involved are those esthetic considerations which bear substantially on the economic, social, and cultural patterns of a community or district. Advertising signs and billboards, *if misplaced,* often are egregious examples of ugliness, distraction, and deteriora-

tion. They are just as much subject to reasonable controls, including prohibition, as enterprises which emit offensive noises, odors, or debris. The eye is entitled to as much recognition as the other senses, but, of course, the offense to the eye must be substantial and be deemed to have material effect on the community or district pattern" (emphasis supplied).

In *People v Goodman* (31 NY2d 262), in which the Court of Appeals said (p 265): "It is now settled that aesthetics is a valid subject of legislative concern and that reasonable legislation designed to promote the governmental interest in preserving the appearance of the community represents a valid and permissible exercise of the police power", it went on to note (p 266): "In assessing the reasonableness of such legislation, we may properly look to the setting of the regulating community. *(Matter of Cromwell v Ferrier,* 19 N Y 2d 263, 272, *supra).* To be sure, not every artistic conformity or nonconformity is within the regulatory ambit of the police power. Indeed, regulation in the name of aesthetics must bear *substantially* on the economic, social and cultural patterns of the community or district." (Emphasis in original.)

There is no indication in the ordinance, nor do the defendants make any claim, that the plaintiffs' billboards "bear substantially on the economic, social and cultural patterns of the community or district", nor that the plaintiffs' billboards "are egregious examples of ugliness, distraction, and deterioration", nor that they offer "substantial" "offense to the eye", much less that *all* of them do so. There is no contention that the billboards have not been continuously maintained in good condition. Plaintiff Williams, in its brief asserts, without contradiction by the defendants, and we take judicial notice of the fact, that the Town of Southampton extends "a distance of more than 25 miles" and "contains many different types of communities, rich and poor, old and new."

The above factors indicate strongly that the standards established by the *Ferrier* and *Goodman* cases for upholding esthetic zoning have not been met. The ordinance here under attack is invalid on that ground alone. But the challenge to the ordinance which is decisive is that based on the First Amendment provision guaranteeing freedom of speech and press, made applicable to the States by the Fourteenth Amendment (see *Cantwell v Connecticut,* 310 US 296). As the Supreme Court noted in *Virginia Pharmacy Bd. v Virginia Consumer Council* (425 US 748, 765, *supra):* "So long as we

preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the free flow of commercial information is indispensable * * * And if it is indispensable to the proper allocation of resources in a free enterprise system, it is also indispensable to the formation of intelligent opinions as to how that system ought to be regulated or altered. Therefore, even if the First Amendment were thought to be primarily an instrument to enlighten public decision-making in a democracy, we could not say that the free flow of information does not serve that goal." When the foregoing is coupled with "the test that in the First Amendment area 'government may regulate * * * only with narrow specificity' *NAACP v Button,* 371 U. S. 415, 433 (1963)" *(Hynes v Mayor of Oradell,* 425 US 610, 620), we are forced to the conclusion that the ordinance here under consideration fails to meet the requisite tests and is defective on its face. That conclusion is reinforced by the Supreme Court's declaration in *Follett v Town of McCormick* (321 US 573, 575), that: "'Freedom of press, freedom of speech, freedom of religion are in a preferred position.'" Also supporting that conclusion is the statement of the Supreme Court in *National Assn. for Colored People v Button* (371 US 415, 438-439, *supra):* "The decisions of this Court have consistently held that only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms. Thus it is no answer to the constitutional claims asserted by the petitioner to say, as the Virginia Supreme Court of Appeals has said, that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression. For a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." (See, also, *McLaurin v Burnley,* 279 F Supp 220, 224, affd 401 F2d 773, cert den 399 US 928; *Tollett v United States,* 485 F2d 1087, 1092.)

Thus, not only is the ordinance lacking in the "narrow specificity" required for government regulation of matters affecting the First Amendment area, since the zoning ordinance bars billboards throughout the town, but it also fails to meet the requirement that the town show "a compelling state interest" in the regulation it has imposed, which bars in its

entirety, a First Amendment medium, billboards. Nor is our conclusion in any way put into question if, instead of applying the above standards, we were to use the balancing standard set forth in *Jeannette Rankin Brigade v Chief of Capitol Police* (342 F Supp 575, 584-585, affd 409 US 972) in which the court said: "The cases indicate that the Supreme Court uses a balancing test, weighing the particular First Amendment rights asserted against countervailing state interests. The formula for expression which is accompanied by conduct has been perhaps best articulated in *United States v. O'Brien,* 391 U. S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), where the Court held that the restrictions on expression are valid if (1) the '[regulation] furthers an important or substantial governmental interest,' (2) the 'governmental interest is unrelated to the suppression of free expression,' and (3) the incidental restriction on alleged First Amendment rights is no greater than is essential to the furtherance of that interest."

Discussing the Federal statute, which barred *all* mass demonstrations on the Capitol grounds, the court in that case said (p 585): "Such a prohibition is hardly in keeping with the principle that statutes 'in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ "means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." ' Carroll v. President & Comm'rs of Princess Anne County, 393 U. S. 175, 183, 89 S. Ct. 347, 353, 21 L. Ed. 2d 325 (1968)."

Here the ordinance does not deal narrowly only with those billboards, if any such there be, which are in fact a *substantial* offense to the eye and are deemed to have a *material* effect on the community pattern (see *Matter of Cromwell v Ferrier,* 19 NY2d 263, 272, *supra).* Nor is there, nor can there be, any claim that the ban on billboards, a First Amendment medium, "furthers an important or substantial governmental interest". Nor can there be any claim that "the governmental interest is unrelated to the suppression of free expression". Hence, the ordinance must fall for failure to comply with any of the three tests set forth above. It is therefore invalid on its face and must be struck down and plaintiffs are entitled, as a matter of law, to the injunction which they seek.

The majority's effort to distinguish *Remeny* by stressing the

fact that leaflets are transitory and may be rejected, whereas signs thrust their message upon passersby, is without merit. In any case, such media of communication are still aspects of free press and are therefore entitled to First Amendment protection. To extirpate the medium from a governmental area, the governmental body seeking that goal must meet the pressing State interest test. While the test may be more easily met if the medium of press expression is more obtrusive, the test must nevertheless be met. It cannot be evaded by a process of balancing which gives free rein to the exercise of individual predilections by the members of the governing body taking the action or the members of the bench ruling on the issue of constitutionality. Thus, in holding that "a trial is warranted" to determine "the issue as to whether there is a reasonable relationship between the ordinance under challenge and the exercise of the Town of Southampton's police power in the furtherance of public safety and welfare", the majority of the court, I submit, is simply not facing up to the real question involved in this appeal and is setting up a "straw" issue for determination by the trial court. There is in this record simply no basis for a contention that the issue of whether the ordinance was a reasonable exercise of the police power raises a question of fact, for the record contains no conflicting contentions of fact on that issue. The question here is solely one of law; it should not be ducked by a remand for trial.[2]

Suozzi, J. (dissenting). I dissent from the majority's holding which mandates a trial to determine "whether there is a reasonable relationship between the ordinance under challenge and the exercise of the Town of Southampton's police power in the furtherance of public safety and welfare", and would dismiss those portions of the complaints which allege such a violation. I also dissent from the majority's holding which, in effect, dismisses those portions of the plaintiffs' causes of action which allege a violation of their First Amendment rights, since I concur with the conclusion of Mr. Justice Shapiro that the ordinance herein represents an unconstitutional abridgment of the plaintiffs' First Amendment rights

---

2. There is no merit to respondents' contention that plaintiffs were required to exhaust their administrative remedies before resorting to this court action, since they are claiming that the ordinance is unconstitutional insofar as it violates their First Amendment freedoms (see *Matter of Cohen v D'Elia*, 55 AD2d 617; *Lesron Junior v Feinberg*, 13 AD2d 90, 94).

under the authority of *People v Remeny* (40 NY2d 527). I agree with him that billboards represent a form of commercial speech, a mode of communication, which was recently given protection under the First Amendment by the Supreme Court of the United States in *Virginia Pharmacy Bd. v Virginia Consumer Council* (425 US 748). Since the *Virginia* case was decided nine years after *Matter of Cromwell v Ferrier* (19 NY2d 263), it is clear that the issue of First Amendment rights was never considered by the Court of Appeals in *Cromwell* and that *Cromwell* is not controlling on this issue.

Except for the determination of our Court of Appeals in *Matter of Cromwell v Ferrier (supra),* I would have no hesitancy in declaring that the ordinance herein is confiscatory and not related to the police power. The majority relies on *Cromwell* to support its holding that plaintiffs' theory which alleges that the ordinance is confiscatory and unrelated to the police power, is a "viable" one, the resolution of which must await the outcome of a full trial.

My reading of *Cromwell (supra)* does not support a conclusion that a trial is necessary on the police power theory. Rather, it supports, I believe, my conclusion that the portions of the complaints which allege an invalid exercise of the police power should have been dismissed.

In dealing with what the majority concedes is the "very" issue involved herein, the Court of Appeals in *Cromwell* upheld, as a valid exercise of the police power, an ordinance implicitly banning all nonaccessory signs throughout the Town of Wallkill and dismissed the petition therein.

A reading of the *Cromwell* decision, as well as the record and briefs filed therein, indicates that the ordinance therein, insofar as it banned the erection of nonaccessory signs throughout the town, was virtually identical to the ordinance involved at bar. Although the court in *Cromwell* noted that not all regulations based on aesthetic considerations would suffice to justify the prohibition of a legitimate business, but only regulations based on aesthetic considerations which (p 272) "bear substantially on the economic, social, and cultural patterns of a community or district", the fact remains that in *Cromwell,* when faced with this particular constitutional attack on an ordinance very similar to the one at bar, the court dismissed the petition and did not remand for a trial.

Clearly, if *Cromwell* is the controlling precedent herein, as the majority holds, there would be no factual issues to be

tried, and the petition would have to be dismissed. By holding that a trial is necessary in order to resolve the issues raised in the police power claim, the majority thereby precludes an accelerated review by our Court of Appeals of what, I believe, is solely an issue of law. At the same time, this holding effectively imposes upon the plaintiffs the onerous and unnecessary burden of overcoming, at a trial, the presumption of constitutionality which attaches to this ordinance.

I am constrained to file this separate dissenting opinion only because I do not agree with Mr. Justice SHAPIRO's suggestion that the ordinance involved here is so different from that in *Cromwell* as to remove it from the controlling effect of *Cromwell* on the issue of confiscation and the reasonable exercise of the town's police power. Admittedly, the ordinance in *Cromwell* did not provide, as does the ordinance here, for the eventual elimination of all existing billboards in the town in addition to banning all new nonaccessory signs. However, that difference is insignificant in light of the holding of the Court of Appeals in *Matter of Harbison v City of Buffalo* (4 NY2d 553), that prior nonconforming uses may be eliminated through amortization over a reasonable period of time.

Accordingly, I concur in the conclusion reached by Mr. Justice SHAPIRO in his dissenting opinion with regard to the free speech and press claims, but not as to the police power claims.

HOPKINS, Acting P. J., and TITONE, J., concur with MOLLEN, J.; SHAPIRO and SUOZZI, JJ., dissent and vote to reverse the orders under review and to grant judgment to the plaintiff in each action (1) declaring that the provisions of the subject zoning ordinance which prohibit the maintenance and use of all billboards in all districts of the town and compel the removal as unlawful structures of all billboards erected in the town before June 1, 1975 are unconstitutional and void and (2) enjoining the enforcement of those provisions of the ordinance, with separate opinions. Each would do so on the ground that the portions of the ordinance declared to be invalid violate rights of free speech and press. SHAPIRO, J., would also declare those sections of the ordinance invalid as an improper exercise of the police power. SUOZZI, J., would, however, dismiss those portions of the complaints which, in effect, allege an improper exercise of the police power.

Order of the Supreme Court, Suffolk County, dated March

30, 1976 (and made in the first, second and third above-captioned actions) modified, on the law, by deleting therefrom the provisions which have the effect of denying the branches of the cross motions which sought dismissal of the first three causes of action asserted in the first above-captioned action and of the first cause of action asserted in the second and third above-captioned causes of action, and substituting therefor provisions dismissing those provisions of the said causes of action which assert the invalidity of the subject ordinance on grounds other than the assertion that the provision thereof which prohibits billboards is not reasonably related to public safety and welfare. As so modified, order affirmed, without costs or disbursements.

Order of the Supreme Court, Suffolk County, dated March 30, 1976 (in the fourth above-captioned action), as corrected by a further order of the same court, dated April 19, 1976, modified, on the law, by deleting the provision that the defendant's motion "is otherwise denied" and substituting therefor a provision that the said motion is otherwise granted by dismissing those portions of the first, second and third causes of action which assert the invalidity of the subject ordinance on grounds other than the assertion that the provision thereof which prohibits billboards is not reasonably related to public safety and welfare and that the said motion is otherwise denied. As so modified, order affirmed, without costs or disbursements.