■ ROBERT J. MOODY et al., Respondents, v ADAM J. FILIPOWSKI et al., Appellants.—In an action for a judgment declaring that the plaintiffs have the right to use certain property owned by the defendants for "beach, recreation and swimming purposes", and for an injunction enjoining the defendants from constructing a one-family dwelling on the property, the defendants appeal from an order of the Supreme Court, Orange County (Ritter, J.), dated May 22, 1987, which, *inter alia,* granted the plaintiffs' motion for a preliminary injunction enjoining the defendants from constructing the one-family dwelling and denied the defendants' cross motion for a preliminary injunction restraining, *inter alia,* the plaintiffs from interfering with their use of the property and from using the land without paying a reasonable fee and providing liability insurance coverage therefor.

Ordered that the order is affirmed, with costs, and the parties are directed to proceed with the trial of the action with all convenient speed.

The pertinent facts are undisputed. In 1927, Howard Conklin, Anne W. Conklin, Chauncey K. Conklin and Mattie H. Conklin subdivided into lots certain property owned by them and they filed a subdivision map entitled "Map of Brandon Shores, Village of Greenwood Lake, Town of Warwick, County of Orange" (hereinafter Brandon Shores). In or about 1931, the Conklins conveyed all of the lots to Conklin Operating Corporation (hereinafter Conklin). Thereafter, in the succeeding years, Conklin sold various lots to separate grantees.

The plaintiffs, who are the owners of certain lots in Brandon Shores, acquired title to their respective properties by deeds which "contained or incorporated" the following clause: " 'TOGETHER with the right in common with all other owners of lands shown on said map to use Lot A-1 and the unsold portion of Lot A-2 as shown on said map for beach recreation and swimming purposes only. The party of the second part covenants for himself, his distributees and assigns, to pay for the use of said premises the annual sum of TWENTY FIVE DOLLARS ($25.00) to the party of the first part (Conklin Operat-

ing Corporation), on June 1st in each year, or until a membership corporation shall be formed. Upon the formation of said corporation, the party of the second part shall automatically become a member thereof and pay for the use of said premises the amount fixed by a majority vote of the members of said membership corporation on the date fixed by such vote. In the event of the failure to pay said sum of TWENTY FIVE DOLLARS ($25.00), or the amount fixed by said membership corporation, within thirty (30) days after the same shall become due, the amount so due shall become and hereby is declared a lien on the premises hereby conveyed. The sold portion of said Lot A-2 was conveyed by Conklin Operating Corporation to Alfons L. Meyer by deed dated July 24, 1947, recorded July 26, 1947, in Liber 1052 of Deeds, Page 354, Orange County Clerk's Office, and is briefly described as follows: Being a lot extending from Edgemere Avenue to the shore of Greenwood Lake, 40 feet along Edgemere Avenue and 10 feet along the shore of said Lake and adjoining other lands of said Alfons L. Meyer.' "

In February of 1981 Conklin conveyed title to a number of the Brandon Shores lots to the defendants by a single deed which provided, in pertinent part, as follows:

"Between CONKLIN OPERATING CORPORATION * * * party of the first part, and ADAM J. FILIPOWSKI and TINIE H. FILIPOWSKI * * * parties of the second part.

"Witnesseth that the party of the first part * * * does hereby grant and release unto the parties of the second part * * *

"All of the Lots shown in Section D.; Lots 1 thru 42 in Section E.; Lots 37 thru 45, and 47 thru 84 in Section C.; part of Lots 1, 2, and 10 in Section C.; and all of Lots 7, 8, and 9 in Section C.; Lot 1 in Section B.

"ALSO Lot A-1 and the unsold portion of Lot A-2 as shown on said map, SUBJECT to the following rights and covenants in Deeds heretofore given to property owners for the use of said Lot A-1 and portion of Lot A-2, as follows:

" 'TOGETHER with the right in common with all other owners of lands shown on said map to use Lot A-1 and the unsold portion Lot A-2 as shown on said map for beach recreation and swimming purposes only. The parties of the second part covenant for themselves, their distributees and assigns, to pay for the use of said premises the annual sum of TWENTY FIVE DOLLARS ($25.00) to the party of the first part (Conklin Operating Corporation), on June 1st in each year, or until a membership corporation shall be formed. Upon the formation of said

corporation, the parties of the second part shall automatically become members thereof and pay for the use of said premises the amount fixed by a majority vote of the members of said membership corporation on the date fixed by such vote. In the event of the failure to pay said sum of TWENTY FIVE DOLLARS ($25.00), or the amount fixed by said membership corporation, within thirty (30) days after the same shall become due, the amount so due shall become and hereby is declared a lien on the premises hereby conveyed. The sold portion of said Lot A-2 was conveyed by Conklin Operating Corporation to Alfons L. Meyer by deed dated July 24, 1947, recorded July 26, 1947, in Liber 1052 of Deeds, Page 354, Orange County Clerk's Office, and is briefly described as follows: Being a lot extending from Edgemere Avenue to the shore of Greenwood Lake, 40 feet along Edgemere Avenue and 10 feet along the shore of said Lake and adjoining other lands of said Alfons L. Meyer.'

"It is understood the charge for same has been waived to date by the party of the first part for the use of said beach parcel and no Homeowners' Association has been formed, and there is no amount due and owing for the use of said Beach Parcel.

"ALSO, ALL the roads and remaining lands, if any on said Map which are presently owned by the seller and have not been previously conveyed.

"SUBJECT, however, to all reservations, covenants, easements and restrictions now of record affecting said premises. * * *

"SUBJECT, also to the following covenants, easements and restrictions, viz:

"1. That neither the said premises nor any part of the same shall at any time be used for any purpose except as a private residence; and that no building or structure shall at any time be erected or permitted on said premises other than one one-family private dwelling and, in addition, not more than one private garage of not more than one-story in height for the storage of not more than two cars, as an appurtenance to such dwelling and not more than one private boat house of not more than one-story in height and with a flat deck roof not more than ten (10) feet above highwater level as an appurtenance to such dwelling. This restrictions [sic] shall apply only upon the selling, leasing, conveyancing or changing occupancy of the aforesaid premises by the party of the second part".

Subsequently, in or about November 1986, the defendants began clearing and excavating on "Lot A-1 and the unsold portion of Lot A-2" for the purpose of building a one-family dwelling.

The plaintiffs then commenced this action claiming that the defendants' proposed dwelling would contravene the stated use of "Lot A-1 and the unsold portion of Lot A-2", that by obstructing the property, the plaintiffs would be deprived of the full use and enjoyment of their property and its appurtenances, and that unless the defendants were enjoined "from continuing the aforesaid violation", the plaintiffs would suffer irreparable injury.

The plaintiffs sought and were granted preliminary injunctive relief enjoining the defendants from continuing with their proposed construction pending the determination of the action. The defendants' cross motion for injunctive relief, seeking, *inter alia,* to restrain the plaintiffs from using the land without paying a reasonable fee and providing liability insurance coverage therefor, was denied.

On appeal, the defendants argue that the preliminary injunction in favor of the plaintiffs was improperly granted. We disagree.

It is well settled that: "[t]o be granted a preliminary injunction, a movant must demonstrate (1) a likelihood of ultimate success on the merits; (2) irreparable injury absent the granting of the preliminary injunction; and (3) that a balancing of equities favors his position *(Town of Porter v Chem-Trol Pollution Servs.,* 60 AD2d 987, 988; *Matter of Armitage v Carey,* 49 AD2d 496, 498; *Albini v Solork Assoc.,* 37 AD2d 835). As [was] stated in *Tucker v Toia* (54 AD2d 322, 325-326), however, 'it is not for this court to determine finally the merits of an action upon a motion for preliminary injunction; rather, the purpose of the interlocutory relief is to preserve the *status quo* until a decision is reached on the merits *(Hoppman v Riverview Equities Corp.,* 16 AD2d 631; *Weisner v 791 Park Ave. Corp.,* 7 AD2d 75, 78-79; *Peekskill Coal & Fuel Oil Co. v Martin,* 279 App Div 669, 670; *Swarts v Board of Educ.,* 42 Misc 2d 761, 764, *supra.* Cf. *Walker Mem. Baptist Church v Saunders,* 285 NY 462, 474).' Further, on an appeal from the granting of a preliminary injunction, *we should not interfere with the exercise of discretion by Special Term and will review only to determine whether that discretion has been abused (Western Regional Off-Track Betting Corp. v Town of Henrietta,* 46 AD2d 1010; *R & J Bottling Co. v Rosenthal,* 40 AD2d 911)" *(Gambar Enters. v Kelly Servs.,* 69 AD2d 297, 306 [emphasis supplied]).

We find that the plaintiffs have sufficiently met their burden of showing a likelihood of ultimate success on the merits.

The plaintiffs' claim that they are entitled to the use of all of the land encompassed in "Lot A-1 and the unsold portion of Lot A-2" for beach, recreation and swimming purposes only is supported by the clear language in the challenged clause in their deeds and fully incorporated in the defendants' deed. The challenged clause contains no language limiting the use for beach, recreation and swimming purposes to a portion of the designated lot area, and we note that the defendants' deed described "Lot A-1 and the unsold portion of Lot A-2" collectively as the "said Beach Parcel". In addition, these burdened lots were sold by Conklin in conjunction with the sale of various other lots, from which it may be reasonably inferred that the grantor, in disposing of all the remaining unsold lots constituting a part of Brandon Shores, realized that the subject property could not be sold by itself since its use was limited to beach recreation and swimming purposes. In this regard, the defendants do not contend that they purchased the property without full knowledge of the limitation on its use, nor do they argue that they did not voluntarily assume the financial burdens with respect to the property. It is clear that the provision in the defendants' deed that limits them to constructing a one-family dwelling was intended to apply to the other lots conveyed by their deed. In any event, that construction provision "cannot abrogate the limitations imposed on the property" in question (*Gordon v Incorporated Vil. of Lawrence*, 84 AD2d 558, 559, *affd* 56 NY2d 1003).

In addition, with respect to irreparable injury and a balancing of the equities, we find that if the preliminary injunction were lifted, the defendants' continued construction would interfere with the plaintiffs' full use of the property. Moreover, the construction would lead to "unnecessary economic waste" in the event the plaintiffs prevailed in their action and the defendants were then required to restore the land for its original intended purpose (7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6301.19, at 63-66). Thus, the granting of preliminary relief "permit[s] the rendition of a meaningful judgment when the merits are finally adjudicated" (7A Weinstein-Korn-Miller, NY Civ Prac, ¶ 6301.19, at 63-67).

Under all the circumstances, we direct the parties to proceed with the trial of this action with all convenient speed (*see, Kraemer v T.C.R. Servs.*, 93 AD2d 808; *Albini v Solork Assocs.*, 37 AD2d 835).

We have considered the defendants' other contentions and find them to be without merit. Mollen, P. J., Lawrence and Harwood, JJ., concur.

Bracken, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision granting the plaintiffs' motion for a preliminary injunction, and substituting therefor a provision denying that motion, and affirming the order appealed from as so modified, with the following memorandum, in which Spatt, J., concurs: The plaintiffs have completely failed to show that, in the absence of a preliminary injunction, they will suffer any substantial injury, much less an injury which, in the unlikely event that they should ultimately prevail on the merits, could not be repaired. In the absence of even the slightest hint as to what *irreparable* harm will befall the plaintiffs in the absence of such drastic provisional relief, the issuance of a preliminary injunction by the Supreme Court constituted an improvident exercise of discretion, if not error as a matter of law.

Pursuant to CPLR 6301, "[a] preliminary injunction may be granted in any action where * * * the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff". Whether to grant such an injunction in a particular case is a question committed to the sound discretion of the Supreme Court and hence to the discretion of the Appellate Division as well *(see, James v Board of Educ.,* 42 NY2d 357, 363). The issuance of a preliminary injunction constitutes judicial interference with the personal or property rights of a party before the court has finally determined the precise scope of that party's rights and has therefore properly been characterized as a "drastic form of relief" *(Suffolk Outdoor Adv. Co. v Hulse,* 56 AD2d 365, 378; *see also, Faberge Intl. v Di Pino,* 109 AD2d 235, 240). It has repeatedly been held that this "drastic" provisional relief is not warranted unless the plaintiff proves that, without such relief, he will suffer irreparable injury, and also that there is a likelihood that he will ultimately succeed on the merits *(see, e.g., Koursiaris v Astoria N. Dev.,* 143 AD2d 639; *Suffolk Outdoor Adv. Co. v Hulse, supra).*

The burden is on the party requesting preliminary injunctive relief to show a "clear right to the relief demanded" *(Brand v Bartlett,* 52 AD2d 272, 275; *see also, Matter of Armitage v Carey,* 49 AD2d 496, 498). In this case, the likelihood of the plaintiffs' success on the merits is, at this stage, a matter of pure speculation. The plaintiffs contend that the structure which the defendants propose to build will impinge on their easement. However, the general rule is that the

owner of property which is subject to an easement may use his land in any lawful way, provided that he does not interfere with the rights of the owner of the easement *(see, Grafton v Moir,* 130 NY 465; *Hurd v Lis,* 92 AD2d 653, 654; *Le Sawyer v Squillace,* 14 AD2d 961, 962; *see also,* 2 Warren's Weed, New York Real Property, Easements, § 17.01 [4th ed]; 1 Rasch, Real Property Law and Practice § 757). It is highly questionable whether the plaintiffs will succeed in proving that their easement, which is essentially one for beach and recreational purposes *(cf., Bouchard v Abbott,* 110 AD2d 985; *Marra v Simidian,* 79 AD2d 1046), is so extensive as to preclude the defendants from erecting a dwelling, or for that matter, any other structure, on their property. To succeed on this issue, the plaintiffs will have to prove that the defendant purchased, and presumably will pay the taxes on, property which must remain sterile and which cannot be put to any profitable use. I do not consider this a likely outcome.

Even if it were considered likely that the plaintiffs will succeed, on the merits this alone would not constitute a basis for the granting of provisional relief. Such relief should be granted only when it appears that, without it, the plaintiffs will suffer irreparable injury. If the defendants in this case were to continue the construction of their building during the pendency of this action, and if the plaintiffs were ultimately to prevail, as they insist is likely, then the plaintiffs would be entitled to a mandatory injunction directing the removal of the structure *(see, Batchelor v Hinkle,* 140 App Div 621; *Lyle v Little,* 28 App Div 181; *see also,* 2A Warren's Weed, New York Real Property, Injunctions, §§ 3.16, 3.19 [4th ed]; 49 NY Jur 2d, Easements, § 253). Although it is clear that the *defendants* would suffer a hardship in the event that such relief were ultimately to be granted (a hardship which, I might add, would be entirely self-created), I do not see how this would result in any significant injury to the *plaintiffs.* The degree to which the defendants' proposed structure might restrict the plaintiffs' ability to engage in recreational activities on the subject property is not clear; it is, in fact, not clear whether the defendants' proposed structure would affect the plaintiffs' enjoyment of their easement at all. The plaintiffs' assertions concerning the nature of the irreparable injury which they claim to anticipate are wholly conclusory, and thus insufficient to establish a right to provisional relief *(see, Kurzban & Son v Board of Educ.,* 129 AD2d 756). From what evidence there is in the record, it appears that any limitation on the plaintiffs' ability to engage in recreational activities on the

defendants' property which might result should the defendants continue the process of construction during the pendency of this action would constitute, at most, a slight inconvenience, so that the drastic relief of a preliminary injunction is not to be warranted *(see generally, Koursiaris v Astoria N. Dev., supra; Cowan v Vassallo,* 67 NYS2d 296, *affd* 271 App Div 829).

I therefore vote to modify the order appealed from so as to provide for the denial of the plaintiffs' motion for a preliminary injunction. As so modified, the order should be affirmed.